IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STEPHEN J. ROBERTS,                )
                                   )
            Plaintiff,             )
                                   )
        vs.                        )       Civil Action No. 05-167
                                   )
JO ANNE B. BARNHART,               )
COMMISSIONER OF SOCIAL SECURITY,   )
                                   )
            Defendant.             )

O R D E R

AND NOW, this 28th day of September, 2006, upon consideration of Plaintiff's Motion for Summary Judgment (document No. 14) filed in the above-captioned matter on October 24, 2005,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Defendant's Motion for Summary Judgment (document No. 15) filed in the above-captioned matter on November 14, 2005,

IT IS HEREBY ORDERED that said Motion is DENIED.

This matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g). Specifically, on remand, the Commissioner is to fully develop the record by requisitioning and reviewing Plaintiff's medical records from Dr. Baumgartel and any other relevant medical records which would assist in sufficiently analyzing Plaintiff's medical condition.

1

I.        **Procedural History**

Plaintiff, Stephen J. Roberts, filed an application for disability insurance benefits ("DIB") under Title II of the Social Security Act on June 20, 2002, asserting an onset date of August 1, 1981.  (R. 44); 42 U.S.C. §§ 401-433.  He was last insured for a period of disability and DBI benefits on June 30, 1987.  (R. 14).  After initially being denied benefits, Plaintiff filed a timely request for an appeal on December 17, 2002, and a hearing was held by Administrative Law Judge ("ALJ") Alma S. DeLeon on September 30, 2003 at which Plaintiff was unrepresented.  On December 11, 2003, the ALJ denied Plaintiff benefits.  (R. 11-20).  On February 11, 2004, Plaintiff then filed an appeal for review of the ALJ's decision, which was denied by the Appeals Council on January 6, 2005. (R. 3, 10).[1]  On February 14, 2005, Plaintiff filed a timely appeal with this Court.  Both parties have filed cross-motions for summary judgment.

II.       **Factual Background**

Plaintiff was born July 11, 1954 and has a high school education.  (R. 44, 71).  At the time of the hearing, he was a 49 year old single man living in his mother's home. (R. 14, 93).  Plaintiff last worked in January of 1985 for a period of three

---

[1]The state agency had previously determined that Plaintiff became disabled under Title XVI of the Social Security Act on March 1, 2002, based on a supplemental security income ("SSI") application filed by Plaintiff on March 28, 2002.

weeks, and before that he was dismissed from his earlier employment on August 15, 1981 for not working overtime.  (R. 109, 171, 173).

Plaintiff alleges that he has suffered from severe anxiety and depression since August 1, 1981, and that these conditions have prevented him from working.  Plaintiff saw Dr. Ira E. Baumgartel, his primary care physician, numerous times in 1981 for depression relating to his job.  (R. 156).  Dr. Baumgartel wrote a note indicating that Plaintiff could not work on July 23, 1981 or July 25, 1981 due to "problems associated with his depression." (R. 157). Dr. Baumgartel subsequently diagnosed Plaintiff with severe anxiety and depression, as indicated in his note of September 24, 2003. (R. 156).

Plaintiff also saw Dr. Richard A. Milo on several occasions during 1981 (R.110) and Dr. Robert L. Wittig, a psychiatrist.  Dr. Wittig prescribed Imipramine for Plaintiff on or about November 21, 1981.  (R. 113).  Plaintiff testified that he took several medications during this time, including Sinequan, Donnatal, Ludiomil, and Ativan.  (R. 175).  Plaintiff also testified to seeing Dr. Nicholas and Dr. Rubio in 1980 before the alleged onset date.  (R. 180).  Plaintiff testified that he stopped seeing those physicians because they were making him feel worse and because he was having financial difficulties.  (R. 181).

In October of 2002, Plaintiff's condition worsened due to a severe rectal infection.  (R . 115).  Plaintiff saw Dr. Walter W.

Hiller, a psychiatrist, on March 19, 2002 for his ongoing anxiety and depression. (R. 115). Dr. Hiller diagnosed Plaintiff with a major depressive disorder, recurrent, severe and generalized anxiety disorder. (R. 119). He prescribed Paxil and Zyprexa and recommended individual therapy, and later prescribed Prozac. (R. 90, 119). In a follow-up note dated July 16, 2002, Dr. Hiller diagnosed Plaintiff with obsessive-compulsive disorder. (R. 114, 153).

III. **Testimony of Claimant**

At the hearing held before the ALJ on September 30, 2003, Plaintiff voluntarily waived his right to counsel. (R. 162). Before questioning began, Plaintiff told the ALJ that he had difficulty securing a statement from Dr. Baumgartel, who told Plaintiff that he would need to obtain a requisition for the statement. (R. 162-164). Plaintiff testified that he asked the Social Security Administration to send a requisition to Dr. Baumgartel, but Dr. Baumgartel did not receive one. Instead, Dr. Baumgartel submitted the note dated September 24, 2003. (R. 156). Plaintiff asked if the ALJ would postpone the ruling until he could get the requisition (R. 164-165), and the ALJ responded that she "[could] ask for (a requisition) again." (R. 164). Throughout the hearing the ALJ continued to assure Plaintiff that she would request the statement from the doctor for the Plaintiff and would hold open

the record for 15 days to receive documentation from the doctor. (R. 165-166, 186-187).

Upon questioning, Plaintiff testified that he could not work during the relevant period because he worried that he did not perform well, that his supervisors and co-workers would not like him, and that he worked too slowly. (R. 169-170). He also testified that he had occasional crying spells and suicidal inclinations, though he never attempted suicide. (R. 171-172). He further testified that he had seen psychiatrists in 1981, and that Dr. Wittig prescribed various medications for him which he described as ineffective, and which made it so that he "just didn't care about anything enough to think." (R. 175). Plaintiff lives with his mother, who does most of the housework, though Plaintiff takes out the trash and runs the lawn mower. (R. 176-177). Plaintiff likes to watch tv and listen to the radio. (R. 177). Before the relevant time period, he enjoyed working on a stock car with his brother. (R. 177).

Plaintiff can also bathe, dress himself and drive. (R. 178-179). Regarding his work relationships, Plaintiff testified that he could cooperate with co-workers and talk to them when necessary for work, but did not see them socially except on rare occasions. (R. 179). Plaintiff testified to having some concentration problems and a feeling of loneliness and hopelessness. (R. 180). Finally, Plaintiff spoke about his psychiatric treatment

5

in 1981 and cited ineffective treatment and financial problems as the reasons for ending treatment.  (R. 181-182).

## IV.      Standard of Review

Judicial review of a social security case is based upon the pleadings and the transcript of the record.  42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact.  Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001)("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive")(emphasis added)(quoting 42 U.S.C. § 405(g)); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999)(noting that the court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion.  Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)(citations omitted). However, a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence."  Morales v. Apfel, 225 F.3d 310, 316 (3d Cir. 2000)(citations omitted).  "Nor is

evidence substantial if it is overwhelmed by other evidence--
particularly certain types of evidence (e.g., that offered by
treating physicians)--or if it really constitutes not evidence but
mere conclusion." Id.

A disability is established when the claimant can
demonstrate some medically determinable basis for an impairment that
prevents him from engaging in any substantial gainful activity for
a statutory twelve-month period. Fargnoli v. Massanari, 247 F.3d
34, 38-39 (3d Cir. 2001)(internal quotation marks and citations
omitted). "A claimant is considered unable to engage in any
substantial gainful activity 'only if his physical or mental
impairment or impairments are of such severity that he is not only
unable to do his previous work but cannot, considering his age,
education, and work experience, engage in any other kind of
substantial gainful work which exists in the national economy... .'"
Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration ("SSA") has promulgated
regulations incorporating a five-step sequential evaluation process
for determining whether a claimant is under a disability as defined
by the Act. See 20 C.F.R. § 416.920. In step one, the Commissioner
must determine whether the claimant is currently engaging in
substantial gainful activity. 20 C.F.R. § 416.920(b). If so, the
disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137,
140 (1987). If not, the second step of the process is to determine

7

whether the claimant is suffering from a severe impairment.  20 C.F.R. § 416.920(c).  "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 920.921(a).  If the claimant fails to show that his impairments are "severe," he is ineligible for disability benefits.  If the claimant does have a severe impairment, however, the Commissioner must proceed to step three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment.  20 C.F.R. § 416.920(d).  If a claimant meets a listing, a finding of disability is automatically directed.  If the claimant does not meet a listing, the analysis proceeds to steps four and five.

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work.  20 C.F.R. § 416.920(e).  The claimant bears the burden of demonstrating an inability to return to his past relevant work.  See Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994).  If the claimant is unable to resume his former occupation, the evaluation moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability.  See 20 C.F.R. § 416.920(f).  In making this determination, the ALJ should consider the claimant's residual

functional capacity, his age, education and past work experience. Id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he is capable of performing work and is not disabled. See 20 C.F.R. § 416.923.

In addition, the Commissioner has promulgated regulations dealing specifically with the evaluation of mental impairments. See 20 C.F.R. § 416.920a. In assessing mental disorders to determine disability, the Commissioner is required to consider medical evidence including certain defined symptoms, signs and laboratory findings that substantiate the presence of the impairment. 20 C.F.R. § 416.920a(b)(1). The Commissioner must also determine the severity of the impairment by assessing the functional limitations resulting from it. 20 C.F.R. § 416.920a(b)(2).

**V.        The ALJ's Decision**

In the present case, the ALJ followed the five-step process to evaluate Plaintiff's claim for benefits. The ALJ found that Plaintiff had not engaged in substantial gainful activity since at least January of 1985. (R. 15). The ALJ noted, however, that she need not dwell on whether the three weeks Plaintiff worked during 1985 constituted substantial gainful activity in light of her ultimate finding that he was not under a disability on or before June 30, 1987. (R. 15). In the second step, the ALJ found that the Plaintiff could reasonably have had more than minimal mental work limitations and, therefore, found his condition to be severe. Id.

9

At step three, the ALJ concluded that Plaintiff's impairments did not reach the level of a listed disability during the relevant work period. Id. Although Plaintiff's depression rose to the level specified in listing 12.04, he did not "display[] the mental signs and symptoms specified in part A... or that anxiety was either his predominant disturbance or the consequence of his attempts to master symptoms, as required by listing 12.06." (R. 17). As for part B of Listings 12.04 and 12.06, the ALJ found that Plaintiff's daily activities were moderately restricted, citing that he drove, watched TV, listened to the radio, and attended to his personal care needs. Id. Therefore, Plaintiff was not impaired to the degree required by part C of Listings 12.04 and 12.06 and was capable of performing substantial gainful activity. Id. The ALJ then found that Plaintiff retained mental residual capacity, despite Plaintiff's claim that he was mentally incapacitated. (R. 17-18). The ALJ did, however, find that Plaintiff could not deal with the public, could not cope well with stress in critical situations, could handle only minimal interaction with peers and supervisors, could not follow detailed instructions and could not make complex decisions. (R. 18).

At step four, the ALJ found Plaintiff had no past relevant work experience. Id. At step five, the ALJ posed a hypothetical with the limitations and conditions set forth above to a vocational expert, Dr. L. Leon Reid. Dr. Reid testified that Plaintiff could

perform as a light janitor (unskilled, over 500,000 jobs nationally), vehicle washer or equipment cleaner (unskilled, over 201,000 jobs nationally), and hand packer (unskilled, over 318,000 jobs nationwide). Id. After finding that these occupations were in harmony with the Dictionary of Occupational Titles, the ALJ found there was substantial work in the national economy which Plaintiff could perform on or before June 30, 1987, and thus denied him DIB benefits. Id.

**VI.    Legal Analysis**

In the present case, Plaintiff alleges that the ALJ failed to fully develop the record by not securing the medical records of Dr. Baumgartel and Dr. Wittig, most notably the statement by Dr. Baumgartel which the ALJ told Plaintiff she would request. It is settled law that an ALJ has a duty to develop a full and fair record in a social security case. See Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995). Particularly where the claimant is unrepresented by counsel, the ALJ must exercise a heightened level of care and assume a more active role. Smith v. Harris, 644 F.2d 985, 989 (3d Cir. 1981). Where it is clear that lack of counsel "prejudiced the claimant or the administrative proceeding was marked by unfairness due to the lack of counsel, this is sufficient for remand or reversal." Livingston v. Califano, 614 F.2d 342, 345 (3d Cir. 1980). Further, if evidentiary gaps result in prejudice to the claimant, then cause for remand exists. Gauthney v. Shalala, 890 F.

11

Supp. 401, 410 (E.D. Pa. 1995).  In this case, the ALJ failed to fully develop the record resulting in unfairness and prejudice to Plaintiff.

Specifically, Plaintiff informed the ALJ that he was having difficulty securing a requisition form in order to obtain statements by his physician, Dr. Baumgartel. (R. 162-164).  The ALJ stated repeatedly that she would request the information for Plaintiff, but the record shows no indication that she ever did so. (R. 164-166, 186-187).  A statement by Dr. Baumgartel may have been crucial to accurately determining the validity of Plaintiff's alleged August 1, 1981 onset date.  Dr. Baumgartel is the first physician on record that Plaintiff saw during the relevant period for his anxiety and depression.  The information in the record regarding those visits, as well as the visits to Drs. Milo and Wittig, consists of receipts from office visits and prescriptions. In his note dated September 24, 2003, Dr. Baumgartel stated that he believed Plaintiff to have been suffering from "severe anxiety and depression" in 1981.  (R. 156).  Therefore, a more in-depth statement by Dr. Baumgartel could be helpful to determine the nature and severity of Plaintiff's condition, and cannot be discredited based upon speculation that the information in the statement would be futile because Dr. Baumgartel may not have maintained records or that the information would be repetitive.  Jozefick v. Shalala, 854 F. Supp. 342, 348 (M.D. Pa. 1994).

In <u>Jozefick v. Shalala</u>, the ALJ had told the <u>pro se</u> claimant that he would secure records from a doctor who had seen the patient years ago, had destroyed his records, and who submitted a note giving the diagnosis and office visit dates. <u>Jozefick</u>, 854 F. Supp. at 348. In <u>Jozefick</u>, the court held that the ALJ's assurances that he would requisition the records from the claimant's doctor prejudiced the claimant because the ALJ ruled without completing his duty to develop the record. <u>Jozefick</u> at 350. Similarly, here, for the reasons already stated, the ALJ's failure to requisition Dr. Baumgartel's relevant medical records resulted in prejudice to the Plaintiff.

**VII.     <u>Conclusion</u>**

In conclusion, the Court finds that the ALJ erred by not fully developing the record after assuring Plaintiff that she would do so. Accordingly, the Court denies both Defendant's and Plaintiff's Motions for Summary Judgment and remands the case to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g).

<u>s/Alan N. Bloch</u>
United States District Judge

ecf:     Counsel of record